CHARLES L. THOMPSON, IV, CA BAR NO. 139927
charles.thompson@ogletree.com
MICHAEL D. THOMAS, CA BAR NO. 226129
michael.thomas@ogletree.com
SUSAN T. YE, CA Bar No. 281497
susan.ye@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:     415.442.4870

Attorneys for Defendants
SELECT EMPLOYMENT SERVICES, INC.,
CONCENTRA HEALTH SERVICES, INC.
and SELECT MEDICAL CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA VILLANUEVA, on behalf of herself and others similarly situated,<br><br>PLAINTIFF,<br><br>vs.<br><br>SELECT EMPLOYMENT SERVICES, INC., a corporation; CONCENTRA HEALTH SERVICES, INC., a corporation; SELECT MEDICAL CORPORATION, a corporation; and DOES 1 to 100, inclusive,<br><br>DEFENDANTS. | Case No.  3:17-cv-06875<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANTS**<br><br>[28 U.S.C. §§ 1332, 1441, 1446, & 1453 (Class Action Fairness Act)]<br><br>[Filed concurrently with Civil Cover Sheet; Notice of Related Cases; Certification of Interested Parties; and Declaration of Danielle Kendall in Support of Notice of Removal; Declaration of Michael D. Thomas in Support of Notice of Removal]<br><br>Action Filed:       October 26, 2016<br>Trial Date:          None Assigned |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Select Employment Service, Inc., Concentra Health Services, Inc., and Select Medical Corporation ("Defendants") remove this action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453 (the Class Action Fairness Act ("CAFA")) because: (1) Plaintiff Christina Villanueva ("Plaintiff") is a "citizen of a State different from any defendant," (2) "the number of members of all proposed plaintiff classes in the aggregate is" over 100, and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." All CAFA requirements are satisfied.

These facts were true when Plaintiff filed her Class Action Complaint ("Complaint") and remain true as of the date of filing this Notice of Removal. Removal jurisdiction is appropriate as detailed more fully below:

## I.   THE STATE COURT ACTION

1.  On October 26, 2017, Plaintiff filed her Complaint in the Superior Court of the State of California for the County of Alameda ("Action"), Case No. RG17880281. (Declaration of Michael D. Thomas ("Thomas Decl."), ¶ 2.) The Action asserts claims for: (1) failure to pay overtime wages; (2) failure to pay double time wages; (3) failure to include all remuneration when calculating overtime rate of pay; (4) failure to provide meal periods and pay meal period premium wages; (5) failure to authorize and permit rest breaks and pay rest break premiums; (6) failure to provide accurate wage statements; and (7) unfair competition.

2.  On October 31, 2017, Plaintiff served Defendants with a copy of the Summons and Complaint, Civil Case Cover Sheet, and a Notice of Complex Determination Hearing and Case Management Conference. A true and correct copy of these documents is attached as Exhibit 1 to the Thomas Declaration. (Thomas Decl., ¶ 3, **Exhibit 1**.)

3.  On November 29, 2017, Defendants filed an Answer to the Complaint. (Thomas Decl., ¶ 4, **Exhibit 2**.)

///

## II. REMOVAL IS TIMELY

4. Under 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6(a), based on the service of the Complaint on October 31, 2017, Defendants' deadline to remove is November 30, 2017. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999) (Thomas Decl. ¶5.) Defendants also timely file this Notice of Removal less than one year after the commencement of the filing of the original Complaint. *See* 28 U.S.C. § 1446(c). This Notice of Removal is timely.

## III. REMOVAL IS PROPER UNDER CAFA

5. The Action is removable under CAFA given the allegations and claims. The Complaint asserts claims for: (1) failure to pay overtime wages; (2) failure to pay double time wages; (3) failure to include all remuneration when calculating overtime rate of pay; (4) failure to provide meal periods and pay meal period premium wages; (5) failure to authorize and permit rest breaks and pay rest break premiums; (6) failure to provide accurate wage statements; and (7) unfair competition.

6. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

7. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendants, the number of members in Plaintiff's proposed classes in the aggregate is over 100, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Minimal Diversity of Citizenship Requirement Is Satisfied

8. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B),

1453(a), (b); *Rodgers v. Central Locating Service, Ltd.*, 412 F. Supp. 2d 1171, 1174-79 (W.D. Wa. 2006).

9. Defendants are informed and believe that at all relevant times, Plaintiff was, at the time of the filing of the Action, and still is, a resident of the State of California. (Complaint, ¶ 3.) Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

10. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court established the proper test for determining the principal place of business of a corporation for purposes of diversity jurisdiction. *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Court held that "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184, 1192. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters -- provided that the headquarters is the actual center of direction, control and coordination." *Id*. A company's "'principal place of business' refers to the corporation's "nerve center." *Id*. at 1192. The "nerve center" is normally where the corporation maintains its headquarters. *Id.; see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that an unincorporated association is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business," with the state of the principal place of business being where a substantial predominance of corporate operations occur or where the majority of the partnership's executive and administrative functions are performed).

11. At all relevant times, Defendant Select Employment Services, Inc. has been a citizen of Pennsylvania and not California.

12. At all relevant times, Defendant Select Employment Services, Inc. has been a subsidiary of parent company Select Medical Corporation incorporated under the laws of Delaware

4

with its principal place of business in Pennsylvania. (Declaration of Daniella Kendall ("Kendall Decl."), ¶3.) At all relevant times, Defendant Select Employment Service, Inc. has not been organized or incorporated under the laws of California or had its principal place of business there. (Kendall Decl., ¶3.) Select Employment Services, Inc.'s principal place of business is in Mechanicsburg, Pennsylvania, where it conducts the majority of its business, and its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (Kendall Decl. ¶ 3.) Therefore, at all relevant times, Defendant Select Employment Service, Inc. has been a citizen of Pennsylvania and not California.

13. At all relevant times, Defendant Concentra Health Services, Inc. ("Concentra") has been a subsidiary of Select Medical Corporation incorporated under the laws of Nevada with its principal place of business in Texas. (Kendall Decl., ¶4.) At all relevant times, Concentra has not been organized or incorporated under the laws of California or had its principal place of business there. (Kendall Decl., ¶ 4.) Concentra does business in a number of states and does not conduct the substantial predominance of its business in any single state. (Kendall Decl. ¶ 4.) As such, Concentra's principal place of business is in Dallas, Texas, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (Kendall Decl. ¶ 4.) Therefore, at all relevant times, Concentra has been a citizen of Texas and not California.

14. At all relevant times, Defendant Select Medical Corporation has been incorporated under the laws of Delaware with its principal place of business in Pennsylvania. (Kendall Decl., ¶5.) At all relevant times, Defendant Select Medical Corporation has not been organized or incorporated under the laws of California or had its principal place of business there. (Kendall Decl., ¶5.) Select Medical Corporation does business in a number of states and does not conduct the substantial predominance of its business in any single state. (Kendall Decl. ¶ 5.) As such, Select Medical Corporation's principal place of business is in Mechanicsburg, Pennsylvania, where its corporate headquarters are located and where its high-level corporate officers, who are responsible for the direction, control, and coordination of its activities, are located. (Kendall Decl.

¶ 5.) Therefore, at all relevant times, Defendant Select Medical Corporation has been a citizen of Pennsylvania and not California.

15. Based on the foregoing, minimal diversity is established because, at all relevant times, Plaintiff has been a citizen of California, and none of the Defendants is a citizen of California.

16. Removal and Intradistrict Assignment to the Oakland division of this Court are thus proper because Defendants conduct business within the City of Oakland. *See* 28 U.S.C. § 1332(d); *Serrano v. 180 Connect Inc.*, 478 F.3d 1018, 1019 (9th Cir. 2007).

### B. CAFA's Class Size Requirement Is Satisfied

17. Plaintiff's Complaint alleges seven putative classes: 1) Overtime class; 2) Double time Class; 3) Regular Rate Class; 4) Meal Period Class; 5) Rest Break Class; 6) Direct Wage Statement Class; and 7) Derivative Wage Statement Class. (Complaint, ¶ 40(A-G).)

18. Plaintiff concedes "each class has over 100 members." (Complaint, ¶ 42(a).)

19. Thus, CAFA's size requirement is satisfied, and this is a class action pursuant to 28 U.S.C. § 1332(d).

### C. CAFA's Requisite Amount in Controversy Is Satisfied

20. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

21. Plaintiff has not alleged a specific amount in controversy in the Complaint. However, the failure of the operative complaint to specify the total amount of monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) (observing that defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim."). In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so,

the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

22. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

23. Plaintiff defines her overtime claims, double time claims, and wage statement claims as on behalf of "[a]ll current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action [October 26, 2017] and through December 31, 2016…" (Complaint, ¶ 40(A), (B) and (F).)

24. Plaintiff defines her rest break claims as on behalf of "[a]ll current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action [October 26, 2017] and through the date notice is mailed to a certified class . . . ." (Complaint, ¶ 40(E).)

///
///
///
///

25. Here, Plaintiff seeks the recovery of rest period penalties, overtime and double time wages, wage statement penalties and attorneys' fees on behalf of herself and the putative class that satisfies the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).[1]

### 1. **Relevant Data**

26. Defendant Concentra has employed approximately 1286 hourly non-exempt employees in California since October 26, 2013. (Kendall Decl., ¶ 6.)

27. From October 26, 2013, to November 26, 2017, Concentra's hourly non-exempt employees in California worked at least 242,369 shifts of at least four-hours. (Kendall Decl., ¶ 7.)

28. From October 26, 2013, to December 25, 2015, the number of shifts over 8 hours but less than 12 for hourly non-exempt employees employed by Concentra in California is 79,625 shifts. (Kendall Decl., ¶ 8.)

29. From October 26, 2013, to December 25, 2015, the number of shifts over 12 hours for hourly non-exempt employees employed by Concentra in California is 1,147 shifts. (Kendall Decl., ¶ 9.)

30. The putative class is paid every two weeks. (Kendall Decl., ¶ 10.) For the purposes of Concentra's payroll administration, there are 26 pay periods in a year. (Kendall Decl., ¶ 10.) From January 1, 2016, to December 31, 2016, the number of wage statements issued to current and former hourly non-exempt employees employed by Concentra in California is 24,687. (Kendall Decl., ¶ 10.)

31. From October 26, 2013, to the present, the average hourly rate for non-exempt hourly employees employed by Concentra in California is $25.99. (Kendall Decl., ¶ 11.) Plaintiff earned $23.58 per hour as of November 2017. (Kendall Decl., ¶ 11.).

### 2. **Rest Period Penalties**

32. Plaintiff alleges "[d]uring the four years prior to the filing of the complaint, Plaintiff and similarly situated employees would work on workdays in shifts of more than 10 hours which is

---

[1] In alleging the amount in controversy for CAFA removal, Defendants do not concede in any way that Plaintiff's allegations in the Complaint are accurate or meritorious, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor do Defendants concede that any or all putative class members are entitled to any recovery, or are appropriately included in the Action.

long enough to entitle them to three rest breaks under California law. Despite that California law requires employers to provide employees with timely rest breaks, Defendant employed a policy and procedure which failed to provide Plaintiff and the class members with first, second, and/or third rest breaks." (Compl. ¶35.)

33. Pursuant to Labor Code section 226.7 and IWC Wage Orders, "[i]f Plaintiff and members of the Rest Break Class did not receive rest breaks for every four hours, or major fraction thereof, worked in a day, Defendants were required to pay them one hour of pay at the employee's regular rate of pay for each workday that the rest break is not provided." (Compl. ¶¶ 81-83.)

34. Based on the relevant data, the potential rest period penalties in controversy is **$5,715,061.02** (242,369 four-hour shifts x 23.58 per hour[2]).

### 3. Failure to Pay Overtime Wages and Double Time Wages

35. Pursuant to Labor Code sections 510 and 1194, and IWC Wage Order No. 1-2001, Plaintiff alleges Defendants are required to compensate putative class members at a rate of one and one-half times their rate of pay for all hours worked in excess of eight hours per day, forty hours per week, and for the first eight hours on the seventh workday, and double time for all hours worked in excess of twelve hours in any workday and for all hours worked in excess of eight hours on the seventh consecutive day in any workweek. (Compl. ¶¶ 43-62.)

36. **Overtime Wages.** According to Plaintiff's own allegations "Defendants required Plaintiff and members of the Overtime Class to work in excess of eight hours in a workday and/or in excess of 40 hours in a week and/or on a seventh consecutive day of work; but Defendants did not pay Plaintiff and members of the Overtime Class one and on-half times their respective regular rates of pay for this time from approximately the four years prior to the filing of the initial complaint in this action through December 31, 2016." (Compl. ¶ 49.) Plaintiff alleges putative class members are entitled to be compensated at an average rate of approximately $35.37 per hour (one and one-half the average regular rate of $23.58) for (79,625 number of shifts above 8 hours but less than 12). According to Plaintiff's theory, putative class members were paid an hourly rate

---

[2] For purpose of the amount in controversy, we conservatively used Plaintiff's hourly rate, which is less than the average hourly rate during the applicable class period.

of pay for each overtime hour.  Under Plaintiff's allegations, they would be entitled to recover at least the following total approximate amount of overtime compensation:  **$938,778.75** = (79,625 x 35.37) – (79,625 x $23.58).  The amount of alleged overtime compensation owed is actually larger.  This calculation is a conservative estimate because the available data only covers October 26, 2013 to December 26, 2015, which does not include overtime wages through the following year (i.e., Plaintiff's overtime putative class goes through December 31, 2016).

37. **Double time Wages.** According to Plaintiff's own allegations, "Defendants required Plaintiff and members of the Double-Time Class to work in excess of 12 hours in a workday and/or in excess of 8 hours on a seventh consecutive day of work; but Defendants did not pay Plaintiff and members of the Double-Time Class two times their respective regular rates of pay for this time from approximately the four years prior to the filing of the initial complaint in this action through December 31, 2016."  (Compl. ¶ 59.).  Plaintiff alleges putative class members are entitled to be compensated at an average double time rate of approximately $47.16 (double of average rate of $23.58) for (1,147 number of double time shifts).  According to Plaintiff's theory, putative class members were paid an hourly rate of pay for each double time hour.  Under Plaintiff's allegations, they would be entitled to recover at least the following total approximate amount of double time compensation:  **$27,046.26** = (1147 x $47.16) – (1147 x $23.58).  The amount of alleged double time compensation owed is actually larger.  This calculation is a conservative estimate because the data provided only covers October 26, 2013 to December 26, 2015, which does not include double time wages through the following year (i.e., Plaintiff's overtime putative class goes through December 31, 2016).

### 4. <u>Failure to Furnish Accurate Itemized Statements</u>

38. Plaintiff alleges "Defendants failed to provide accurate and complete wage statements to Plaintiff, members of the Direct Wage Statement Class and members of the Derivative Wage Statement Class in accordance with Labor Code Section 226(a).  Defendants failure to compensate Plaintiff, members of the Direct Wage Statement Class, and members of the Derivative Wage Statement Class for all hours worked at the applicable overtime rate of pay and/or double-time rate of pay, and failure to pay premium wages for all non-compliant meal periods

and/or non-complaint [sic] rest breaks, resulted in Defendant providing Plaintiff, members of the Direct Wage Statement Class, and members of the Derivative Wage Statement Class with inaccurate itemized wage statements in violation of Labor Code Section 226(a) because they did not reflect all of the employee's earnings, resulting in Defendants inaccurately recording and reporting earnings such as net and gross wages on the wage statements."  (Compl. ¶ 87.)

39. Pursuant to Labor Code section 226(e), Plaintiff, members of the Direct Wage Statement Class, and members of the Derivative Wage Statement Class are entitled to recover fifty dollars ($50) for the initial pay period within the applicable limitations period in which a violation of Labor Code section 226 occurred and one hundred dollars for each violation of Labor Code section 226 in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) per employee.  (Compl. ¶ 91.).  The statute of limitations for a claim for statutory penalties under section 226 is one year.  *See* Cal. Code Civ. Proc. § 340(a).  Putative class members are paid every two weeks. (Kendall Decl. ¶ 10.)  Concentra issued approximately 24,687 wage statements to putative class members from January 1, 2016 through December 31, 2016. (Kendall Decl. ¶ 10.)  Thus, according to Plaintiff's allegation that Defendants failed to provide accurate and timely wage statements, the putative class is entitled to recover at least the following: ( [1] initial wage statements x $50] + [24,686 subsequent wage statements x $100]) = **$2,468,650.00.**

### 5. Summary of Amount in Controversy

40. As detailed above, the amount in controversy for Plaintiff's class claims totals at least **$9,149,536.03 (or $2,468,650.00. + $27,046.26   + $938,778.75 + $5,715,061.02)**, far exceeding the jurisdictional minimum under 28 U.S.C. § 1332(d).

41. The Complaint satisfies the requisite amount of controversy for removal under CAFA *without* taking into account: (1) attorneys' fees; (2) Plaintiff's claims for meal period violations; and (3) remunerations for improper calculation of the overtime rate.  Defendants have not inflated the CAFA amount in controversy.  In fact, Plaintiff's rest period claim alone satisfies the amount in controversy.   If necessary, Defendants could and would supplement this Notice of
///

42. Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

### IV.  VENUE IS PROPER

43. The Superior Court of the State of California for the County of Alameda is located within the territory of the United States District Court for the Northern District of California. 28 U.S.C. § 84(a). Venue is proper in this Court because it is the district and division embracing the place where the Action was pending before removal. 28 U.S.C. § 1441(a).

### V.  SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

44. As discussed above, Plaintiff served Defendants with a copy of the Summons and Complaint, Civil Case Cover Sheet, and a Notice of Complex Determination Hearing and Case Management Conference.  A true and correct copy of these documents is attached as Exhibit 1 to the Thomas Declaration. (Thomas Decl., ¶ 3, **Exhibit 1**.)

45. As required by 28 U.S.C. §1446(d), a true and correct copy of the Notice to Adverse Parties of Removal of Action to the United States District Court by Defendants to be filed in Alameda County Superior Court, without the exhibits, is attached hereto as Thomas Decl., ¶ 6, **Exhibit 3**.)

46. A copy of the original Notice of Removal will be filed with the Superior Court of the State of California for the County of Alameda.

47. If this Court has a question regarding the propriety of this Notice of Removal, Defendants requests it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

///
///
///
///
///
///
///

## VI. CONCLUSION

For the foregoing reasons, Defendants remove the above-entitled action to United States District Court for the Northern District of California.

DATED: November 30, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Michael D. Thomas*
　　CHARLES L. THOMPSON, IV
　　MICHAEL D. THOMAS
　　SUSAN T. YE

Attorneys for Defendants
SELECT EMPLOYMENT SERVICES, INC.,
CONCENTRA HEALTH SERVICES, INC.
and SELECT MEDICAL CORPORATION